This case involves an action brought by the Disciplinary Board of the Alabama State Bar against Robert McKim Norris, Jr., alleging violations of DR 1-102(A)(6), 2-102(B), and 2-103 of the Alabama Code of Professional Responsibility.[1] The case was heard on May 24, 1990, and the Disciplinary Board found Norris guilty of all three charges. Following the introduction of evidence as to the appropriate discipline, the Disciplinary Board imposed a two-year suspension from the practice of law. Norris appeals.
The facts in this case stem out of a tragic incident that occurred in the Birmingham area during the summer of 1987. Randy Allen Carter, 19 months old, died after having been left for over 6 hours in the summer heat in a van operated by a day care center. Within a day or two after the incident, Norris claims, his law office received a telephone call from an anonymous female who claimed that she personally knew the Carter family and that out of concern for them, she urged that Norris's firm help the Carter family. She stated that the family was "broke" and "didn't even have enough money to buy flowers for [Randy's] funeral." Robert Taylor, a nonlawyer representative of the firm, explained to the caller that absent a request from the Carters for the firm's services, the firm could do nothing more than "make sure they [the Carters] get a pot of flowers."
Because of the high profile of the case, Taylor met with Norris to discuss the call. They decided to have a flower wreath delivered to the funeral home where the ceremonies for Randy Carter were to take place and to attach to that wreath a letter. Taylor prepared the following letter and gave it to Norris for his approval:
"To the family of Randy Allen Carter:
 "Please accept our deepest sympathy in the loss of Randy. We know that you are presently being faced with many difficult decisions; and, will soon be faced with others.
 "If we may be of assistance to you in any regard, do not hesitate to contact us at 870-8000.
"ROBERT NORRIS ASSOCIATES, P.C."
The letter was signed by Taylor and his home telephone number was provided. Norris claims he then reviewed the Disciplinary Rules to ensure that he was acting within the boundaries of the rules. Norris read the letter, gave his approval, folded the letter, placed it in the envelope, together with a copy of a brochure describing his firm's services, sealed the envelope, handed it to Robert Watts, another nonlawyer employee, and instructed him to attach the letter to the wreath and to deliver both to the funeral home. Watts delivered the items as requested and, upon returning, he reported that none of the Carter family members was present at the funeral home when he delivered the items.
After news media reports surfaced concerning Norris's gesture, the Birmingham Bar Association's Grievance Committee began an investigation, which ultimately led to a complaint being filed with the Alabama State Bar against Norris. Approximately four or five days after Norris had sent the letter with the brochure to the Carters, he submitted a copy of the brochure to the Alabama State Bar for approval pursuant to DR 2-102(B).
 I.
Initially, we point out the applicable standard of review in disciplinary proceedings: *Page 1036 
 " 'Under the present rules of disciplinary enforcement, where the members of the Disciplinary Board hear the evidence and observe the demeanor of the witnesses, the Supreme Court, on review, will presume that the Board's decision on the facts is correct; and the disciplinary order will be affirmed unless the decision on the facts is unsupported by clear and convincing evidence, or the order misapplies the law to the facts.'
 "Haynes v. Alabama State Bar, 447 So.2d 675, 677
(Ala. 1984); Trammell v. Disciplinary Board of the Alabama State Bar, 431 So.2d 1168, 1172 (Ala. 1983)."
Courtney v. Alabama State Bar, 492 So.2d 1002, 1003 (Ala. 1986).
Norris first contends that the Disciplinary Board has acted unconstitutionally in interpreting DR 2-103 to allow it to punish him for conduct that he says the Bar has previously and "repeatedly approved in published ethics opinions." Norris cites a number of ethics opinions released by the Bar approving of solicitation by Alabama licensed attorneys to prospective clients by way of "direct mail." See Rule 7.2, Alabama Rules of Professional Conduct.[2] Norris concedes that the Bar has not approved "in-person" solicitation by an attorney to prospective clients, but he claims that he has not engaged in any "in-person" solicitation.
We find no authority in the "direct mail" cases Norris cites to support his constitutional claims. The facts in this case do not concern "direct mail" or even the "mail" at all. Rather, this case is concerned with other conduct undertaken in an effort to reach a prospective client.
DR 2-103 reads as follows:
 "A lawyer may not solicit nor cause to be solicited on his behalf professional employment from a prospective client, when a significant motive for the lawyer's doing so is the lawyer's pecuniary gain. The term 'solicit' includes contact in person or by telephone."
It is undisputed that neither Norris nor any of his representatives ever made contact by telephone or in person with any of the members of the Carter family. Norris contends that because there was no such contact, he cannot be found to have violated DR 2-103. However, the broad language of DR 2-103 is not limited to only those two forms of solicitation. The listing of those two forms of solicitation was not intended to be exhaustive but, rather, was intended to specify two particular types of conduct.
 "Whether this is intended to suggest that other types of conduct, such as written communication, may not be treated as 'solicitation' is not clear from the language. However, . . . the provision perhaps should be read in connection with Alabama [Rules of Professional Conduct] Rule 7.2(a), which states that an attorney may advertise by 'written communication not involving solicitation.' Read in this context, Rule 7.3 might be interpreted to mean that solicitation, as defined, also 'includes' communication in writing, provided the writing is distributed in person."
R. Thigpen, Alabama Moves To "New Rules" Adoption, 40 Ala.L.Rev. 80-81, n. 622 (1988).[3] We acknowledge that a better practice might have been to use the phrase "includes, but without limitation," instead of simply the term "includes." Nonetheless, DR 2-103 is clear as to its purpose and spirit, and Norris clearly violated the purpose and spirit of the rule.
 II.
Norris also contends that there was no independent factual basis for his conviction under DR 1-102(A)(6) and that this provision *Page 1037 
is unconstitutionally vague. DR 1-102(A)(6) reads as follows:
"A lawyer shall not:
". . . .
 "(6) engage in any other conduct that adversely reflects on his fitness to practice law."
The purpose of this subpart 6 is to ensure a good faith effort by attorneys to abide by the disciplinary rules. Comments, Rule 8.4, Alabama Rules of Professional Conduct.[4]
Norris claimed at trial that he consulted the Disciplinary Rules and attempted to comply with DR 2-102 and 2-103. We can only guess that Norris consulted the Disciplinary Rules because he was unsure of the ethics of his plans. As stated earlier, Norris's actions were clearly conduct that was not specifically permitted by the rules, but were actions that a literal reading of the rule would not prohibit. This conduct from an attorney shows an indifference to the purpose and spirit of the rule. This is an independent basis to support a DR 1-102(A)(6) violation.
As to Norris's claim that DR 1-102(A)(6) is unconstitutionally vague on the grounds that it fails to establish any standards by which one might evaluate contemplated behavior, we disagree. In Dowling v. Alabama StateBar, 539 So.2d 149 (Ala. 1988), cert. denied, 490 U.S. 1081,109 S.Ct. 2102, 104 L.Ed.2d 663 (1989), this Court addressed a challenge to DR 2-101(A) and DR 1-102(A)(4) as being vague and overbroad and we held that those rules were written precisely enough that the attorney in that case knew or should have known that his conduct was prohibited. In determining whether a statute is unconstitutionally vague, a court must not consider it in isolation and abstraction; instead, the constitutional standard for vagueness is the practical criterion of fair notice to those to whom the statute is directed. Rathle v.Grote, 584 F. Supp. 1128 (M.D.Ala. 1984).
DR 1-102(A)(6) clearly puts attorneys on notice to exercise great discretion so as not to engage in conduct that would adversely reflect on their fitness to practice law.
 III.
Norris finally contends that his two-year suspension was "too harsh" a punishment for a "de minimus violation of DR 2-102(B)." Although Norris failed to timely submit to the Bar the brochure explaining the services of his firm, a violation for which he was cited, he does not challenge on appeal the Disciplinary Board's decision as to his guilt. However, Norris does challenge the punishment he received for violating DR 2-102(B), which we now address.
When a member of the Bar is found guilty by the Disciplinary Board, it may impose punishment in one of the following ways: disbarment, suspension, public censure, private reprimand, or a private informal admonition. Rule 3, Alabama Rules of Disciplinary Enforcement. On appeal, this Court may affirm the Disciplinary Board's order regarding punishment or it may modify the order if necessary. Courtney v. Alabama State Bar, supra; Perloff v. Disciplinary Board of the Alabama State Bar,424 So.2d 1305 (Ala. 1982).
There is undisputed evidence that Norris knew his conduct bordered on what is permissible and what is prohibited by the Bar. Norris admitted that he failed to timely submit the brochure describing his firm's services for the Bar's approval. Norris admitted that his sending the flowers and letter were wrong and said that he would not "do it" again. In light of these facts, we find that there is sufficient evidence that Norris's acts and omissions constituted violations of DR 1-102(A)(6), 2-102(B), and 2-103. Thus, the decision of the Disciplinary Board to impose a two-year suspension was not error.
Based on the foregoing, the decision of the Disciplinary Board is due to be, and it is hereby, affirmed.
AFFIRMED. *Page 1038 
HORNSBY, C.J., and ALMON, ADAMS, STEAGALL and INGRAM, JJ., concur.
[1] Norris's appeal concerns complaint ASB-87-424. However, we note that the Disciplinary Board entertained three other complaints against Norris, ASB 86-409, 86-561(A), and 88-209. ASB 88-209 was disposed of by way of a summary judgment in favor of Norris. Norris was found not guilty by the Disciplinary Board of the charges contained in ASB 86-409 and 86-561(A).
[2] Although Rule 7.2, which replaced DR 2-102, did not go into effect until January 1, 1991, the substance of the two rules is identical.
[3] Again, although Rules 7.2 and 7.3, Alabama Rules of Professional Conduct, which replaced DR 2-102 and DR 2-103, respectively, did not go into effect until January 1, 1991, the substance of those two rules is identical to that of DR 2-102 and DR 2-103.
[4] There were no Comments to DR 1-102(A)(6). However, Rule 8.4, which replaced DR 1-102(A)(6), is identical to DR 1-102(A)(6).